DECISION.
{¶ 1} Defendant-appellant, Ryan Burrell, appeals convictions for aggravated murder pursuant to R.C. 2903.01(B), murder pursuant to R.C.2903.02(B), and aggravated robbery pursuant to R.C. 2911.01(A)(1). He was also convicted of firearm specifications accompanying each count. The victim of these offenses was Audrey Keys, whose body was found in her apartment on October 16, 2001. She died from a single gunshot wound to the head.
 {¶ 2} Burrell presents nine assignments of error for review. In his first assignment of error, he contends that the general division of the court of common pleas lacked subjectmatter jurisdiction to try him. He argues that he was under eighteen years of age at the time of the offenses and that the juvenile court had never properly waived jurisdiction in a bindover proceeding. This assignment of error is not well taken.
 {¶ 3} Absent a proper bindover, the juvenile court has exclusive jurisdiction over cases involving delinquent children. Former R.C.2151.23(A)(1); Gaskins v. Shiplevy, 74 Ohio St.3d 149, 1995-Ohio-262,656 N.E.2d 1282. At the time this case was heard below, the bindover procedure set forth in former R.C. 2151.26 provided the only method by which the juvenile court could relinquish jurisdiction to the common pleas court for the purpose of criminal prosecution. State v. Neguse
(1991), 71 Ohio App.3d 596, 594 N.E.2d 1116; State v. Wilson (May 11, 1994), 1st Dist. No. C-930429.
 {¶ 4} Originally, the record in this case did not contain any reference to a bindover hearing. But the state has properly supplemented the record pursuant to App.R. 9. The supplemental record shows that Burrell was originally charged with burglary in relation to the events surrounding Keys's death. In that case, the juvenile court held a bindover hearing and properly relinquished jurisdiction to the general division of the common pleas court. These events occurred before the indictment in the present case.
 {¶ 5} Once Burrell was properly bound over, the court of common pleas had jurisdiction over the proceedings against Burrell. See State ex rel.Fryerson v. Tate, 84 Ohio St.3d 481, 1999-Ohio-465, 705 N.E.2d 353. Further, following the bindover, Burrell was no longer a "child" within the meaning of the statutes conferring jurisdiction on the juvenile court over cases involving children. See former R.C. 2151.23(A) and2151.011(B)(5)(e). Under the circumstances, a second bindover hearing was unnecessary. We hold that the general division of the common pleas court had jurisdiction to hear the case, and we, therefore, overrule Burrell's first assignment of error.
 {¶ 6} In his second assignment of error, Burrell contends that the trial court erred in failing to dismiss the case when the trial occurred after the expiration of the two-hundredseventy-day limit provided in Ohio's speedy-trial statutes. He argues that the time in which the state had to try him began to run from the time of his original indictment for burglary. This assignment of error is not well taken.
 {¶ 7} We first note that the state argues that Burrell has waived the issue because he did not raise it in the trial court. Both this court and the Ohio Supreme Court have held that the state has a mandatory duty to comply with the speedy-trial statutes. The accused's failure to object to a trial date outside the applicable time limit does not amount to an acquiescence in that date and does not extend the time within which the accused must be brought to trial. State v. Cutcher (1978),56 Ohio St.2d 383, 384 N.E.2d 275; State v. Singer (1977),50 Ohio St.2d 103, 362 N.E.2d 1216; State v. Hirsch (1998),129 Ohio App.3d 294, 717 N.E.2d 789.
 {¶ 8} R.C. 2945.71(C) provides that a person charged with a felony must be brought to trial within two hundred and seventy days. State v.Brewster, 157 Ohio App.3d 342, 2004-Ohio-2722, 811 N.E.2d 162. If the time ran from Burrell's original indictment for burglary, then he was not tried within two hundred seventy days as required by the statute.
 {¶ 9} Burrell relies upon this court's decision in State v. Cooney
(1997), 124 Ohio App.3d 570, 706 N.E.2d 854. In that case, we relied upon State v. Adams (1989), 43 Ohio St.3d 67, 538 N.E.2d 1025. In Adams,
the Ohio Supreme Court held that "[w]hen new and additional facts arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge."
 {¶ 10} The supreme court later distinguished Adams in State v. Baker,78 Ohio St.3d 108, 1997-Ohio-229, 676 N.E.2d 883. In Baker, the court held that the state, in issuing a second indictment against the defendant, was not subject to the speedy-trial time limits of the original indictment because the subsequent charges were based on new and additional facts that the state did not know at the time of the original indictment. It stated that "[a]dditional crimes based on different facts should not be considered as arising from the same sequence of events for the purposes of speedy-trial computation."
 {¶ 11} In this case, Burrell was charged with burglary after he had admitted in a police interview to going into the victim's apartment, finding her dead, and stealing some of her belongings. His co-defendant, Sonny Gardner, had claimed in an interview with police that Burrell had come up with the idea to go into Keys's apartment. He had taken a gun, had shot her at close range as she slept, and had stolen her belongings. But Gardner's story changed several times, possibly in response to an assault by Burrell while the two were in jail together.
 {¶ 12} Subsequently, Jeremy Pendleton, an inmate incarcerated with Burrell and Gardner, contacted police. According to Pendleton, Burrell had admitted to killing Keys and had left Pendleton with the impression that he was trying to frame Gardner for the crime. Pendleton knew several details about the crime that the police had not released to the public.
 {¶ 13} We find Baker to be dispositive of the present case. The second indictment for murder and robbery was based on facts not available to the state at the time of the first indictment for burglary. Consequently, the state was not subject to the speedy-trial timetable of the first indictment. In view of reasonable continuances that tolled the speedytrial period, Burrell was tried within two hundred seventy days of the second indictment. See Brewster, supra; Hirsch, supra. We, therefore, overrule his second assignment of error.
 {¶ 14} In his third assignment of error, Burrell contends that the trial court erred in allowing testimony by the investigating officer that, in his opinion, Burrell was the perpetrator of the offenses. We agree that this was improper opinion testimony, and its admission into evidence was error. See State v. Webb, 70 Ohio St.3d 325, 1994-Ohio-425,638 N.E.2d 1023; State v. Brundage, 1st Dist. No. 030632, 2004-Ohio-6436.
 {¶ 15} Nevertheless, Burrell failed to object, which precludes him from raising the issue on appeal unless there is plain error. State v.Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332; Hirsch, supra. On the record before us, we cannot hold that, but for the error, the result of the trial clearly would have been otherwise. Therefore, the error did not rise to the level of plain error. See State v. Wickline (1990),50 Ohio St.3d 114, 552 N.E.2d 913; Hirsch, supra. We overrule Burrell's third assignment of error.
 {¶ 16} In his fourth assignment of error, Burrell contends that the trial court erred in admitting into evidence, as a prior consistent statement, a taped statement Gardner had made to police. He contends that when the suggested motive for recent fabrication or other improper influence or motive that justifies the use of a prior consistent statement occurs before the making of that statement, it is not admissible under Evid.R. 801(D)(1)(b). This assignment of error is not well taken.
 {¶ 17} Evid.R. 801(D)(1)(b) provides that a statement is not hearsay if "[t]he declarant testifies at a trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]" Ohio courts have generally interpreted this rule as including only those prior consistent statements that have been made before prior inconsistent statements or before the existence of any motive to falsify testimony. State v. Nichols (1993), 85 Ohio App.3d 65, 619 N.E.2d 80.
 {¶ 18} The record shows that Gardner gave two recorded statements to police on the day of the offenses. In the first, Gardner was questioned by Officer Darlene Lackey, and he said nothing to involve himself or Burrell in the crimes. In the second given later the same day, he told Detective Robert Heinlein that he had seen Burrell shoot Keys in the head as she slept and then steal her belongings. The second statement was played for the jury and was admitted into evidence pursuant to Evid.R. 801(D)(1)(b).
 {¶ 19} Gardner later recanted his second taped statement, stating that the police had forced him to state that Burrell had committed the offenses. At trial, however, Gardner's testimony was consistent with the second taped statement. He testified that Burrell had killed Keys as she slept.
 {¶ 20} Burrell argues that the police officers induced Gardner to make the second taped statement through promises of leniency, and that Gardner recanted that statement only after entering into a favorable plea bargain. Thus, he contends, the motive or influence to testify falsely existed before Gardener made the second taped statement.
 {¶ 21} But the record shows that another motive to fabricate existed. Burrell's argument completely ignores evidence that Burrell had assaulted Gardner at the jail immediately prior to Gardner's recanting of his earlier statements implicating Burrell. This motive to falsify did not exist prior to the time he made his second taped statement to Detective Heinlein. Because the taped statement implicating Burrell occurred before the motive to fabricate existed, the statement was properly admitted into evidence under Evid.R. 801(D)(1)(b). See State v. Mullins (1986),34 Ohio App.3d 192, 517 N.E.2d 945; State v. Bock (1984),16 Ohio App.3d 146, 474 N.E.2d 1228; State v. Hall (May 10, 1995), 1st Dist. No. C-940277. Accordingly, we overrule Burrell's fourth assignment of error.
 {¶ 22} In his fifth assignment of error, Burrell contends that the prosecutor committed misconduct in his closing arguments. He contends that the prosecutor denied him a fair trial by referring to him as a "psychopath" and by improperly vouching for the truth of the testimony of the state's witnesses.
 {¶ 23} The test for prosecutorial misconduct is (1) whether remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused's substantial rights. State v. Lott (1990), 51 Ohio St.3d 160,555 N.E.2d 293; Hirsch, supra. The conduct of the prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402,613 N.E.2d 203; Hirsch, supra.
 {¶ 24} We note, moreover, that Burrell failed to object to the comments of which he now complains. Thus, he is precluded from raising the issue on appeal unless it rises to the level of plain error.Underwood, supra; Brundage, supra.
 {¶ 25} We agree that the prosecutor's comments went beyond zealous advocacy into the realm of the patently improper. See Keenan, supra;State v. Smith (1998), 130 Ohio App.3d 360, 729 N.E.2d 149; Hirsch,
supra. Yet again, we caution the state about using these tactics.
 {¶ 26} Nevertheless, given the overwhelming evidence against Burrell, we cannot hold that but for the prosecutor's comments, the outcome of the trial clearly would have been otherwise. Consequently, the prosecutorial misconduct did not rise to the level of plain error. See Wickline,
supra; Hirsch, supra; Brundage, supra. Accordingly, we overrule Burrell's fifth assignment of error.
 {¶ 27} In his sixth assignment of error, Burrell contends that the evidence was insufficient to support his convictions. In his eighth assignment of error, he contends that the trial court erred in overruling his Crim.R. 29 motions for judgments of acquittal, which is the same as a claim that the evidence was insufficient to support the convictions.Brewster, supra; State v. Cedeno (Oct. 23, 1998), 1st Dist. No. C-970465. Therefore, we consider these assignments of error together.
 {¶ 28} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt the essential elements of aggravated murder pursuant to R.C. 2903.01(B), murder pursuant to R.C. 2903.02(B), and aggravated robbery pursuant to R.C. 2911.01(A)(1). Consequently, the evidence was sufficient to support Burrell's convictions for those offenses. See State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492; Brundage, supra; State v. Haynes, 1st Dist. No. C-020685, 2004-Ohio-762. Burrell is really arguing that the state's witnesses, particularly Gardner, were not credible, but matters as to the credibility of the witnesses were for the trier of fact to decide. State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433. We, therefore, overrule his sixth and eighth assignments of error.
 {¶ 29} In his seventh assignment of error, Burrell contends that his convictions were against the manifest weight of the evidence. After reviewing the record, we cannot hold that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Burrell's convictions and order a new trial. Therefore, his convictions were not against the manifest weight of the evidence. See State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; State v.Allen (1990), 69 Ohio App.3d 366, 590 N.E.2d 1272. We overrule his seventh assignment of error.
 {¶ 30} In his ninth assignment of error, Burrell contends that he was denied the effective assistance of counsel. Burrell has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for counsel's unprofessional errors, the results of the proceeding would have been different. Consequently, he has failed to meet his burden to show ineffective assistance of counsel.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; State v.Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476; State v. Nix, 1st Dist. No. C-030696, 2004-Ohio-5502. A defendant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. State v. Brown
(1988), 38 Ohio St.3d 305, 528 N.E.2d 523. Accordingly, we overrule Burrell's ninth assignment of error and we affirm his convictions.
Judgment affirmed.
Sundermann, J., concurs.
Painter, J., concurs separately.